**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-068**

**Filing Date: June 4, 2012**

**Docket No. 30,691**

**STATE OF NEW MEXICO**,

      **Plaintiff-Appellee,**

**v.**

**KENNETH TRIGGS,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Robert M. Schwartz, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}** Defendant violated parole and, pursuant to the terms of a plea agreement, the State filed a supplemental criminal information seeking to enhance Defendant's sentence for seven of the offenses that were not previously enhanced under the plea agreement. The State used two prior felony convictions to seek enhancement of the basic sentence imposed for those seven offenses. The district court found Defendant to be an habitual offender, enhanced Defendant's sentence for each of the seven offenses by four years, and ordered the sentences

1

to be served consecutively, resulting in a total sentence of twenty-eight additional years in prison. Defendant appeals.

**{2}**      Defendant raises three issues on appeal. He argues that the district court improperly enhanced his sentence based on the parole violation, he challenges his lack of counsel at the parole revocation hearing, and he argues that the district court erred by ruling that the habitual offender enhancement could not be served concurrently. We disagree with Defendant's arguments that the enhancement was inappropriate based on his parole violation and his lack of counsel, but we agree with Defendant that the district court erroneously ruled that it lacked discretion to order the habitual offender enhancements to be served concurrently. Thus, we reverse and remand for the district court to exercise its discretion as to this matter.

**Enhancement Not Improper for Parole Violation**

**{3}**      Defendant contends that the district court could not enhance Defendant's sentence for case numbers CR 98-01477 and CR 98-02723 based on his violation of parole in case number CR 98-03691 because his basic sentence for the offenses in the latter case was fully enhanced under the plea agreement. In support of his argument, Defendant refers us to *Brock v. Sullivan*, 105 N.M. 412, 414, 733 P.2d 860, 862 (1987), a New Mexico Supreme Court case holding that "stacking" multiple parole periods after the final sentence of a consecutive sentence as ordered in a multiple-offense case was not intended under the Criminal Sentencing Act. From *Brock* and its progeny, we understand that "the parole period of each offense commences immediately after the period of imprisonment for that offense, so that the parole period is running concurrently with the running of any subsequent basic sentence being served." *State v. Muniz*, 119 N.M. 634, 636, 894 P.2d 411, 413 (Ct. App. 1995). Extrapolating from these principles, Defendant reasons that a parole violation applies only to the particular charges underlying that parole period. He concludes, therefore, that the parole violation in CR 98-03691 cannot form the basis for enhancing his sentence in the other two cases consolidated under the plea agreement that were not previously enhanced.

**{4}**      We are not persuaded that case law or the plea agreement supports Defendant's argument. Defendant's sentence did not "stack" parole periods. Rather, he was ordered to serve two years of parole after he served twelve years in prison: twenty-and-one-half years constituted the basic sentence for nine property offenses, two of those offenses were enhanced by a total of eight years, and eight-and-a-half years of Defendant's incarceration were suspended. After Defendant served twelve years in prison and was released, he violated the terms of his parole. If Defendant's case involved multiple convictions that were all fully enhanced, then further enhancements would be improper. However, that is far from the situation before us. Defendant was convicted for seven other offenses that were not enhanced at the time Defendant violated parole. New Mexico case law provides that the State "may seek [an habitual-offender] enhancement at any time following conviction, as long as the sentence enhancement is imposed before the defendant finishes serving the term

2

of incarceration and any parole or probation that may follow that term." *State v. Trujillo*, 2007-NMSC-017, ¶ 10, 141 N.M. 451, 157 P.3d 16 (alteration in original) (internal quotation marks and citation omitted). "If the State exercises its discretion and seeks such an enhancement during the appropriate time frame, the trial court is obligated to impose the enhancement once the defendant is proven to be a habitual offender." *Id.* (citing NMSA 1978, § 31-18-20(C) (1983)).

**{5}** The plea agreement, upon which this case is based, consolidated five criminal cases and a total of nine charges. As part of the agreement, the State dismissed two of the criminal cases and five charges against Defendant, agreed that Defendant's initial incarceration would not exceed twelve years, and agreed that it would only pursue habitual sentencing enhancements for two of Defendant's admitted prior felony convictions. In exchange, Defendant pled no contest to the nine charges and admitted that he was validly convicted of four prior felonies. The plea agreement expressly states that Defendant's two prior felony offenses, to which the State agreed to limit the enhancements, would enhance the forgery and fraudulent use of a credit card counts in case number CR 98-03691.

**{6}** The agreement then expressly provides that "[s]hould Defendant violate *any* probation or parole, he is subject to *additional* habitual proceedings." (Emphasis added.) Also, under the provisions entitled "HABITUAL OFFENDER PROCEEDINGS," the plea agreement states:

> UPON VIOLATION: The defendant understands that if he *violates any law* after he enters this plea and before he completes his sentence in this case, he will be subject to habitual offender proceedings based on the convictions listed under "Admission of Identity." The State also may bring habitual offender proceedings if the defendant *violates any condition of probation or parole*. The State may bring habitual offender proceedings if the violation is admitted or proven, even if probation or parole is not revoked or the defendant is not convicted of the new crime.

(Emphasis added.) This repeatedly clear and unambiguous language states that any violation of parole and any violation of any condition of parole and any violation of law will subject Defendant to habitual offender proceedings. There is no language in the plea agreement that supports Defendant's view that a parole violation applies only to the particular offense underlying the parole. Also, Defendant does not refer this Court to any case law that supports his argument. For these reasons, we are not persuaded that Defendant's sentence was inappropriately enhanced on these grounds.

**Enhancement Not Improper for Invalid Waiver of Counsel**

**{7}** Defendant contends that his waiver of counsel at the parole revocation hearing was invalid and, therefore, the result of that hearing was also invalid. Defendant contends that he was never asked anything when he waived his right to counsel and further inquiries were

3

required of the parole board to ensure that his waiver was knowing and voluntary. Defendant refers this Court to *State v. Castillo*, 110 N.M. 54, 57, 791 P.2d 808, 811 (Ct. App. 1990), for the matters of which a defendant should be informed when waiving the right to counsel. *Castillo* does not control, however, because it involved a criminal trial before the district court, not a parole revocation hearing before the parole board. Defendant offers no reasons why the standards for waiver of counsel under the Sixth Amendment that were applied in *Castillo* should apply to parole revocation hearings, and we are not inclined to adopt them.

**{8}**    Parole revocation hearings, like probation revocation hearings, are not formal proceedings as are criminal trials, but they can result in a loss of liberty, a non-absolute liberty conditioned on the observance of parole restrictions. *See State v. Guthrie*, 2011-NMSC-014, ¶ 10, 150 N.M. 84, 257 P.3d 904 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 487 (1972)). "Because loss of [parole] is loss of only conditional liberty, the full panoply of rights due a defendant in a [criminal trial] do [] not apply." *Guthrie*, 2011-NMSC-014, ¶ 10 (alterations in original) (internal quotation marks and citation omitted). Accordingly, parolees and probationers are not afforded protections under the Sixth Amendment, "but rather the more generally worded right to due process of law secured by the [F]ourteenth [A]mendment." *Id.* ¶ 12 (citing *Morrissey*, 408 U.S. at 472, 497).

**{9}**    Unlike a challenge to a waiver of rights under the Sixth Amendment, where the record must show the district court ensured that it was a knowing, intelligent, and voluntary waiver, *see Castillo*, 110 N.M. at 57, 791 P.2d at 811, with a challenge to a waiver of due process rights in a parole hearing, Defendant has the burden of production and persuasion to show that there was reversible, prejudicial error. *Cf. Maso v. N.M. Taxation & Revenue Dep't*, 2004-NMCA-025, ¶ 22, 135 N.M. 152, 85 P.3d 276 (holding that unlike the waiver of rights of criminal defendants facing prosecution, due process does not require a knowing and voluntary waiver of a right to an administrative hearing); *State v. Duran*, 107 N.M. 603, 608-09, 762 P.2d 890, 895-96 (1988) ("[T]o establish a due process violation, and thus reversible error, the defendant must demonstrate prejudice."), *superceded by rule as stated in State v. Gutierrez*, 1998-NMCA-172, 126 N.M. 366, 969 P.2d 970.

**{10}**    In the present case, it is undisputed that Defendant was notified twice of his right to request counsel, and he elected to waive representation at the preliminary hearing stage and confirmed his waiver of counsel at the parole revocation hearing. There is no indication that Defendant made any showing to meet his burden of production and persuasion to prove that his waiver was constitutionally defective and that he was prejudiced thereby. We also agree with the State's observation that nothing in the record suggests that Defendant had difficulty representing himself and presenting explanations for his parole violations, explanations that the parole hearing board encouraged Defendant to present to the judge for his alleged probation violations. Defendant even obtained approval from the parole board to request reconsideration if he were cleared of pending charges and probation violations. Thus, we

4

hold that Defendant has not established that his waiver of counsel at the parole revocation hearing resulted in a violation of due process.

**{11}**    We also note that Defendant's challenge to his waiver of counsel at the parole hearing to escape the habitual offender enhancements is more in the nature of a collateral attack on the plea agreement, than a true challenge to the outcome of the parole hearing. The parole hearing decided only whether Defendant violated the conditions of his parole, not the potential habitual offender enhancements that could result under the plea agreement. Defendant had representation at sentencing at which the consequence for violating parole was decided.

**{12}**    For all of these reasons, we are not persuaded that Defendant's sentence was improperly enhanced under the terms of the plea agreement based on his waiver of counsel at the parole revocation hearing.

**Discretion to Run Habitual Offender Enhancements Concurrently**

**{13}**    Lastly, Defendant contends that the district court erred by concluding as a matter of law that it had no discretion to order that the habitual offender enhancements to Defendant's sentence be served concurrently. Defendant did not raise this issue in his brief in chief. However, Defendant raised this issue in his reply brief, in response to the State's argument in its answer brief referencing *State v. Rapchack*, 2011-NMCA-116, 150 N.M. 716, 265 P.3d 1289. This Court issued the opinion in *Rapchack* less than two months before Defendant filed the brief in chief. The facts of *Rapchack* are convoluted like the facts of the present case, but not at all identical to the facts here. *Rapchack* is cited for its broader statement that "[w]hen the existing sentence is consecutive to a previous sentence, [upon a parole violation], the court may make the existing sentence concurrent, because doing so does not increase the sentence." *Id.* ¶ 17. Although recognizing the existence and relevance of *Rapchack*, the State argues in its answer brief that Defendant waived this argument on appeal because he failed to raise it in his brief in chief.

**{14}**    We choose to address Defendant's argument. Generally, appellate courts will refuse to entertain a new issue raised in a reply brief. *See State v. Castillo-Sanchez*, 1999-NMCA-085, ¶ 20, 127 N.M. 540, 984 P.2d 787. Consistent with its obligation of candor toward the Court, however, in its answer brief, the State disclosed the existence of *Rapchack*, legal authority it deemed controlling and adverse to its position, which was not disclosed by defense counsel. *See* Rule 16-303(A)(2) NMRA. Our Rules of Appellate Procedure require the reply brief to reply only to arguments or authorities presented in the answer brief. *See* Rule 12-213(C) NMRA. In this case, the reply brief responded to the answer brief's reference to *Rapchack* and the State's contention that the issue was waived. We see no unfairness to the State in reaching Defendant's challenge to the district court's refusal to exercise discretion in sentencing, because the State was aware of the existence of *Rapchack* and did not argue that it was inapplicable to the current case.

**{15}** Importantly, we observe that this issue was preserved below; indeed, it was highly contested and was highlighted by the district court as the appellate issue that it wanted the record to clearly present. Thus, the parties and the district court were keenly aware of the matter, and the facts and arguments underlying the district court's ruling were fully developed in the record.

**{16}** We observe that this Court may in its discretion ensure fundamental fairness to a criminal defendant when his or her substantial rights are affected, "even though he [or she] may be precluded by the terms of a statute or rules of appellate procedure." *State v. Traeger*, 2001-NMSC-022, ¶ 18, 130 N.M. 618, 29 P.3d 518 (alteration in original) (internal quotation marks and citation omitted); *see also State v. Paiz*, 1999-NMCA-104, ¶ 28, 127 N.M. 776, 987 P.2d 1163 ("When a plain error affects substantial rights, the United States Supreme Court has indicated that an appellate court should exercise its discretion and reverse if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.") (alteration, internal quotation marks, and citation omitted). In the current case, the State led the district court into its ruling that it lacked discretion in sentencing Defendant and was forced to order Defendant to serve twenty-eight years in prison, based on enhancements to nonviolent, property crimes, triggered by nonviolent, technical violations of his parole terms. In the interest of equity and the integrity of the criminal justice system, and without any indication that unfairness will result to the State, we address Defendant's challenge to his sentence.

**{17}** As indicated, the State argued to the district court that where a parole violation triggers habitual offender enhancements to a sentence, the enhanced sentence is not a new sentence and must run consecutive if the underlying crimes being enhanced run consecutive. The State based its argument on the theory that where "the enhancement is [based] solely on a parole violation, . . . there is no statutory authority that allows th[e] court to modify a sentence that was [originally] imposed." On appeal, the State notes that *Rapchack* may provide contrary authority to its theory in the district court, referring to the statement in *Rapchack* that upon a parole revocation, the district court may modify an existing sentence by running the existing sentence concurrent, where the existing sentence was run consecutive to a previous sentence. *See Rapchack*, 2011-NMCA-116, ¶ 17. In our view, the important principle in *Rapchack* as applied to the current case is that the original judgment does not bind the judge who revokes parole. This principle is consistent with case law stating that "enhanced sentences are new sentences" and that "[i]n imposing the new enhanced sentences, the trial court's arrangement of the manner in which the new enhanced sentences were to be served was not limited by the arrangement for serving the regular sentences." *State v. Baker*, 90 N.M. 291, 294-95, 562 P.2d 1145, 1148-49 (Ct. App. 1977) (construing a previous version of the habitual offender statute); *see also State v. Mayberry*, 97 N.M. 760, 762, 643 P.2d 629, 631 (Ct. App. 1982) (noting that *Baker* provides that "additional sentences as an habitual offender, when there were multiple convictions, could be served concurrently").

6

**{18}** Furthermore, as our analysis above indicates, Defendant's convictions, sentence, and habitual offender enhancements have been dictated entirely by the parties' plea agreement. As the parties and district court discussed, the plea agreement was not boilerplate. It was a comprehensive agreement drafted specifically to apply to Defendant's past, current, and potential future criminal behavior, and the State's current charges against him reflect the parties' agreement on how he was to be punished for them. Under the plea agreement, Defendant was required to serve his basic sentence for nine charges consecutively, two of which were enhanced by four years each, eight-and-a-half years of the sentence were suspended, and there was a twelve-year cap on the nine charges. Defendant agreed to subject any or all of his remaining convictions to habitual offender enhancement based on two prior felony convictions, upon a violation of law, or a violation of a condition of parole or probation.

**{19}** Undisputedly, there is nothing in the plea agreement that requires the district court to run the enhancements consecutively. The State recognized below that the plea agreement could have, but did not, state that Defendant's "counts shall run consecutive for all purposes." Without language in the plea agreement directing the district court to run additional habitual offender enhancement periods consecutively, an automatic twenty-eight-year enhancement for any parole violation seems beyond the contemplation of the parties and the original sentencing court, and we see no reason to construe the agreement to include that requirement. *Cf. State v. Gomez*, 2011-NMCA-120, ¶ 9, __ N.M. __, 267 P.3d 831 (stating that an unresolved ambiguity in the plea agreement will be construed in favor of the defendant on appeal).

**{20}** We also note that there is no statute specifically removing district court discretion to run habitual offender enhancements concurrently, in any context or in this instance, where they were imposed, upon a parole violation, to enhance multiple convictions. *See State v. Bachicha*, 111 N.M. 601, 606, 808 P.2d 51, 56 (Ct. App. 1991) ("We note that the trial court may, in its discretion, order enhanced sentences to be served concurrently when the underlying sentences are concurrent."). "[W]hether multiple sentences for multiple offenses run concurrently or consecutively is a matter resting in the sound discretion of the trial court." *State v. Allen*, 2000-NMSC-002, ¶ 91, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted) (noting a common law presumption in favor of concurrent sentences and the constitutional protection against disproportionate sentences). "In the absence of statute[,] at common law two or more sentences are to be served concurrently unless otherwise ordered by the Court. The trial court has discretion to require [consecutive sentences]." *State v. Jensen*, 1998-NMCA-034, ¶ 21, 124 N.M. 726, 955 P.2d 195 (alterations in original) (internal quotation marks and citations omitted).

**{21}** The habitual offender statute expressly permits the district court some discretion to suspend or defer a sentence enhancement based on one prior felony conviction, *see* NMSA 1978, Section 31-18-17(A) (2003), but where there are two or more prior felony convictions, the statute requires the district court to increase a basic sentence without suspending or deferring a sentence enhancement. *See* § 31-18-17(B), (C). We are mindful that the habitual

offender provisions are highly punitive and, therefore, must be strictly construed. *See State v. Anaya*, 1997-NMSC-010, ¶ 31, 123 N.M. 14, 933 P.2d 223. We believe that if the Legislature intended to remove the district court's discretion to run habitual offender enhancements for multiple offenses concurrently, then it would have done so expressly as it did with regard to suspending or deferring a sentence enhanced by two or more prior felony convictions.

**{22}** We will not construe the Legislature's silence on this matter to prohibit the district court from exercising discretion to run multiple, sentence enhancements concurrently. *Cf. id.* (refusing to infer from legislative silence an intention that its reclassification of a fourth or subsequent DWI conviction to a felony conviction be considered a felony for purposes of the habitual offender statute). In construing a limit on the punitive effect of the habitual offender statute in the face of uncertain legislative intent, the Supreme Court in *Anaya* stated that the rule of lenity required the Court to resolve the ambiguity in the defendant's favor. *See id.* ¶ 32. Like our resolution of the contractual silence in the plea agreement, we think the rule of lenity should resolve the statutory silence in Defendant's favor, as well.

**{23}** The record clearly shows that the district court imposed the twenty-eight-year prison sentence based solely on its understanding that it lacked any discretion to do otherwise. Because we are not persuaded that the plea agreement, case law, or statute prevents the district court from exercising discretion to run any or all of the enhancements concurrently, we reverse the district court's sentencing order and remand for the district court to exercise its discretion.

**{24}    IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State v. Triggs*, Docket No. 30,691**

**APPEAL AND ERROR**
Fundamental Error
Preservation of Issues for Appeal

**CONSTITUTIONAL LAW**

8

Due Process
Waiver of Counsel

**CRIMINAL PROCEDURE**
Burden of Proof
collateral Attack or Estoppel
Due Process
Enhancement of Sentence
Habitual Criminal
Parole
Plea and Plea Bargaining
Prejudice
Pro Se
Sentencing
Waiver

**STATUTES**
Rules of Construction